# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONNA M. WATSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>ROBERT J. WILKIE, Secretary of )<br>the Department of Veterans Affairs, )<br>)<br>Defendant. ) | Civ. A. No. 17-768<br>Judge Nora Barry Fischer |

## **MEMORANDUM OPINION**

I. INTRODUCTION

In this employment discrimination action under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, Plaintiff Donna M. Watson alleges that she was discriminated against on the basis of her disability, sleep apnea, when the Department of Veterans Affairs ("VA") terminated her in lieu of providing her an accommodation. (Docket No. 37). Defendant Robert J. Wilkie, Secretary of the VA, has moved for summary judgment, which Watson opposes. (Docket No. 39). The matter has been fully briefed and is now ripe for disposition. Having considered the parties' positions and evaluated the evidence in light of the standard governing motions for summary judgment and for the following reasons, Defendant's motion for summary judgment is granted.

II. FACTUAL BACKGROUND

In 2000, Watson began working as a Registered Nurse in the ICU at the VA Pittsburgh Healthcare System, monitoring veterans who were in post intensive medical observation. (Docket No. 44 ¶¶ 2, 3). Her duties included taking vital readings from patients, distributing medications, charting patient records, and responding to any emergencies that might occur during her tour of duty. (*Id.* ¶ 5).

1

In December 2012, Watson was involved in a car accident after she fell asleep while driving. (*Id*. ¶¶ 8-9). Thereafter, she was diagnosed with sleep apnea. (*Id*. ¶ 8). In early 2013, Watson requested and was granted an accommodation to work the daylight shift of 7:00 a.m. – 7:00 p.m., (*Id*. ¶ 10), but was also expected to work the "off tour" shift from 11:00 a.m. – 11:00 p.m. two to three times biweekly. (*Id.* ¶¶ 11-12). Watson worked this schedule for six months, but changed her schedule again in June 2013 after telling her supervisor to "[f]orget the accommodation" because she needed to work a steady schedule. (*Id.* ¶ 13; Docket No. 42-1 at 7). As a result of this request, Watson's schedule was changed to work the daylight shift of 7:00 a.m. – 7:00 p.m., rotating 7:00 p.m. – 7:00 a.m. (Docket No. 44 ¶ 15). She worked this schedule for the next two and a half years. (*Id*. ¶ 16).

From June 2013 until May 2015, Watson was given the opportunity to choose her own work hours, and in January 2015, Watson changed her schedule to work the night shift. (*Id*. ¶¶ 17, 19, 21). Watson testified that she decided to change her schedule to limit "flipping back and forth" between shifts but admits her request was not a formal request for accommodation. (*Id*. ¶¶ 19-20).

In March 2015, Watson returned from vacation "sick as a dog" with asthma and bronchitis. (*Id*. ¶¶ 22-24). She was prescribed steroids by her allergist. (*Id*. ¶ 24). During this time, Plaintiff testified that she thought she was sleeping well and felt well-rested, but was sleeping poorly because she was taking steroids and unable to wear her CPAP machine. (*Id*. ¶¶ 25, 27). Even though Watson knew that she was sick, she did not call off from work because she had just come back from vacation. (*Id.* ¶ 26). Watson concedes that she did not tell her supervisor that she was having problems sleeping or staying awake. (*Id*. ¶¶ 27-28).

It is a violation of hospital policy to fall asleep at work. (*Id*. ¶¶ 6, 7). Despite this policy, Watson fell asleep while on duty on May 18, 19, and 25, 2015. (*Id* ¶ 30). She had not previously

fallen asleep at work. (*Id.* ¶ 31). On June 2, 2015, Watson was removed from her direct patient care duties and was reassigned to administrative duties pending a fact-finding investigation. (*Id.* ¶¶ 35-36). Six days later, Watson submitted a request for accommodation. (*Id.* ¶ 40). On August 14, 2015, following the interactive process, Defendant offered Watson an accommodation to be implemented once she returned to service. (*Id.* ¶ 42). Although Watson stayed awake while working the daylight schedule and performing administrative duties, Defendant issued her a Proposed Removal dated August 28, 2015 following the fact-finding investigation. (*Id.* ¶ 44; Docket No. 46 ¶¶ 61-62). She was ultimately discharged by Barbara Forsha, the Acting Director of the Pittsburgh VA Medical Center. (Docket Nos. 44 ¶ 45; 46 ¶ 55). In rendering her decision, Forsha did not consider Watson's request for accommodation as a mitigating factor. (Docket No. 46 ¶ 67).

Forsha testified that Watson was discharged on the basis of progressive discipline. (Docket No. 44 ¶ 48). Specifically, in 2013, Watson was reprimanded for an unauthorized absence and for failing to administer medication. (*Id.* ¶ 49). In 2014, Watson was issued a seven-day suspension for endangering the safety of a patient. (*Id.* ¶ 50). Watson concedes that each time she was disciplined, it was for endangering a patient.[1] (*Id.* ¶ 51). Forsha considered several additional factors in Watson's termination including her failure to call off on May 18th and 25th when she knew she had fallen asleep on the 17th.[2] (*Id.* ¶ 54). Moreover, Forsha could not reasonably place Watson in a nursing capacity that might put patients in a vulnerable and unsafe position. (*Id.*) Watson was discharged on October 21, 2015. (*Id.* ¶ 53).

---

[1] The parties agree that pursuant to Defendant's policies and procedures an employee can be removed for sleeping on duty where the safety of the patient may have been endangered even if it is an employee's first violation. (Docket Nos. 44 ¶ 52).

[2] Watson was believed to have fallen asleep at work on three different days. Forsha's dates when Watson fell asleep at work are different from those found in the rest of the record, but the discrepancy is not a material issue of fact.

3

III.     RELEVANT PROCEDURAL HISTORY

On June 12, 2017, Watson filed a complaint against Defendant. (Docket No. 1). Following the close of discovery, Defendant filed a motion for summary judgment. (Docket No. 23). By order dated October 10, 2018, this Court found that the interests of justice would be served under FED. R. CIV. P. 15(a)(2) by allowing Watson to file an amended complaint given the parties' agreement that her Title VII and Americans with Disabilities Act ("ADA") claims were improperly asserted and the only potentially viable claim was under the Rehabilitation Act. (Docket No. 35). The Court denied Defendant's motion without prejudice permitting Defendant to reassert its motion in light of the amended pleadings. (*Id.*)

On October 17, 2018, Watson filed an Amended Complaint asserting claims under the Rehabilitation Act and the Declaratory Judgment Act. (Docket No. 37 ¶ 3). Defendant filed an Answer the next day. (Docket No. 38). Defendant moved for summary judgment on November 14, 2018, filed a brief in support thereof, and a concise statement of material facts with supporting exhibits. (Docket Nos. 39-42). On December 2, 2018, Watson filed a brief in opposition along with a counterstatement of material facts and exhibits. (Docket Nos. 43-45). Therein, Watson agreed that her claim under the Declaratory Judgment Act was preempted by the Rehabilitation Act and consented to its dismissal. (Docket No. 43 at 1 n.1). Defendant filed a response to Watson's counterstatement of facts ten days later. (Docket No. 46).

On March 7, 2019, this Court ordered supplemental briefing addressing *Keyes v. Catholic Charities of the Archdiocese of Philadelphia*, 415 F. App'x 405 (3d Cir. 2011). (Docket No. 47). The parties subsequently filed their supplemental briefs and exhibits (Docket Nos. 48, 51), and Defendant also filed a response to Watson's supplemental brief. (Docket Nos. 52).

## IV. LEGAL STANDARD

Summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact is one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue, in rebuttal. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of West*

*Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, deposition testimony, admissions, and/or interrogatory answers to demonstrate the existence of a genuine issue. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing FED. R. CIV. P. 56(c)(1)(A)).

V. DISCUSSION

It this Court's estimation, Defendant is entitled to judgment as a matter of law on both remaining claims. Watson has not proffered sufficient evidence to survive summary judgment on her claims for failure to accommodate and for disability discrimination under the Rehabilitation Act.[3] Specifically, she has not put forth any evidence from which a reasonable jury could find that she was disabled and, thus, both claims fail for the reasons that follow.

The Rehabilitation Act expressly makes the standards set forth in the ADA as amended in the ADA Amendment Act of 2008 ("ADAAA") applicable to federal employers. 29 U.S.C. § 794(d); *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 282 (3d Cir. 2012). The term "disability" means "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1). Both parties agree that if Watson is disabled, she is either actually disabled or regarded as disabled.

"An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." § 12102(4)(D). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking,

---

[3] Disability discrimination claims are analyzed under the *McDonnell Douglas* burden shifting test. *Hatch v. Franklin Cty.*, 755 F. App'x 194, 198 (3d Cir. 2018) (citing *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 499 n.3 (3d Cir. 2010)). Failure to accommodate claims are not. *Bielich v. Johnson & Johnson, Inc.*, 6 F. Supp. 3d 589, 617 (W.D. Pa. 2014).

6

communicating, and working." § 12102(2)(A). "An individual is substantially limited in performing a major life activity if that individual is unable to pursue that major life activity in a comparable manner 'to most people in the general population.'" *Arrington v. Nat'l R.R. Passenger Corp.*, 721 F. App'x 151, 154 (3d Cir. 2018) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). "To undertake that individualized assessment, courts have required some evidence of the plaintiff's substantial limitation—even when the limitation seems self-evident in context." *Alston v. Park Pleasant, Inc.*, 679 F. App'x 169, 172 (3d Cir. 2017).

Watson's claim for failure to accommodate cannot proceed because there is no evidence of record that she was actually disabled. To assert a prima facie case for failure to accommodate a plaintiff must establish: "'(1) [s]he was disabled and h[er] employer knew it; (2) [s]he requested an accommodation or assistance; (3) h[er] employer did not make a good faith effort to assist; and (4) [s]he could have been reasonably accommodated.'" *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)). Contrary to Watson's assertion, being regarded as disabled is not sufficient to succeed on a failure to accommodate claim. (Docket No. 51 at 4). To this end, the Court of Appeals for the Third Circuit recently reminded plaintiffs that "[a]n individual who demonstrates that she is 'regarded as' disabled, but who fails to demonstrate that she is *actually disabled*, *is not entitled to a reasonable accommodation*." *Robinson v. First State Cmty Action Agency*, 920 F.3d 182, 185 (3d Cir. 2019) (emphasis added).

Thus, in order to survive Defendant's motion for summary judgment on this claim, Watson must set forth sufficient evidence from which a reasonable factfinder could find that her sleep apnea was a physical impairment that substantially limited one or more of her major life activities. 42 U.S.C. § 12102(1)(A). Inexplicably, she offered no evidence from which a reasonable jury

7

could make such a finding.[4] Instead, Watson rests on the fact that her diagnosis alone and prior accommodation demonstrate she is disabled; however, the Court of Appeals for the Third Circuit has repeatedly made clear that regardless of the severity of the plaintiff's diagnosis, the plaintiff must still proffer evidence of disability. *See Alston* , 679 F. App'x at 172 (explaining "[w]e agree that cancer can—and generally will—be a qualifying disability under the ADA" but it still requires an individual assessment under the ADAAA); *Weidow v. Scranton Sch. Dist.*, 460 F. App'x 181, 186 (3d Cir. 2012) (finding that bipolar disorder is a serious illness that can certainly limit major life activities, but the plaintiff had not adduced sufficient evidence from which a reasonable jury could so find). Therefore, to the extent Watson argues failure to accommodate, she has not set forth any evidence to prevail on this claim.[5]

Watson's claim for disability discrimination likewise fails as she is not disabled.[6] To establish a prima facie case for disability discrimination, the plaintiff must prove: (1) she is disabled; (2) she is otherwise qualified to perform the essential functions of her job; and (3) she suffered an otherwise adverse employment decision as a result of discrimination. *McNelis v. Pa. Power & Light Co.*, 847 F.3d 411, 414 (3d Cir. 2017) (internal citation and quotation omitted). An individual is "'regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major

---

[4] As Defendant correctly observes while sleep apnea might impair sleeping, breathing, and working, there is nothing in the record to suggest any of Watson's major life activities were impaired more than the average person or that she was unable to perform a broad class of jobs. (Docket No. 48 at 2).

[5] Watson's argument that Defendant was required to consider her need for an accommodation before terminating her lacks merit because "employers are free to discuss events that occurred around the time of the accommodation request; the request does not put years of work history off-limits." *Smith v. Univ. of Scranton*, __ F. App'x __, 2019 WL 2057687, at *2 (3d Cir. 2019).

[6] As set forth above, Watson is not actually disabled. She also does not argue or put forth evidence that she has a record of being perceived as impaired. *Kiser v. Potter*, Civ. Act. No. 3:10–cv–22, 2012 WL 1134810, at *6 (W.D. Pa. Apr. 4, 2012).

life activity." 42 U.S.C. § 12102(3)(A). A plaintiff cannot advance a "regarded as" claim for "impairments that are transitory and minor." § 12102(3)(B). Merely being aware of an employee's diagnosis is not sufficient for an employer to be believed to have regarded an employee as impaired. *Cunningham v. Nordisk,* 615 F. App'x 97, 100 (3d Cir. 2015); *see Neely v. Benchmark Family Servs.*, 640 F. App'x 429, 435-36 (6th Cir. 2016) (explaining under the 2008 Amendments, "it is not enough that the employer is simply aware of a plaintiff's symptoms; rather the plaintiff must show that the employer regarded the individual as 'impaired' within the meaning of the ADA").

Here, there is no evidence demonstrating that Defendant regarded Plaintiff as disabled. Watson admits that her last request for an accommodation was in 2013, after which time she told her employer that it was no longer necessary. (Docket Nos. 42-1 at 7; 44 ¶ 13). Watson subsequently changed her schedule twice without requesting an accommodation. (Docket Nos. 42 at 1; 44 ¶ 13, 17, 19, 21). In addition, Watson admits that the only time she demonstrated any possible residual effects of her sleep apnea at work was when she fell asleep three times in a one-week period. (Docket Nos. 43 at 7; 44 ¶¶ 27-28); *see Lackey v. Heart of Lancaster Reg. Med. Ctr.,* 704 F. App'x 41, 49 (3d Cir. 2017) (finding that a tremor that was only witnessed once or twice provided no evidence that the plaintiff's illness was anything other than transitory).[7] Finally, she points to no evidence that her functioning was impaired at any point other than the three day period in question and even concedes that she did not tell her supervisor that she was having problems sleeping or staying awake. (Docket No. 44 ¶¶ 27-28). While this Court is sympathetic to Watson's diagnosis, there simply is no record evidence of a perceived disability. Thus, she cannot make out

---

[7] Furthermore, Watson has not established that she was terminated due to her disability as she agrees that she fell asleep on each of these days and given the nature of her job, the VA guidelines specifically state sleeping on the job is strictly forbidden and terminable on the first offense. (Docket No. 44¶¶ 6, 7, 30).

a prima facie case of disability discrimination and summary judgment in favor of Defendant is appropriate.

VI.     CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED.

An appropriate order follows.

*/s Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: May 21, 2019

cc/ecf: All counsel of record.